UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID J. LILLIS,

        Plaintiff,        CASE NO. 17-12714
                                        HON. DENISE PAGE HOOD
v.

NORWEGIAN CRUISE LINES, et al.,

        Defendants.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#35]

### I. BACKGROUND

On August 18, 2017, Plaintiff David J. Lillis ("Lillis") filed a Complaint *pro se* against Defendants Norwegian Cruise Lines ("NCLA"),[1] Bret Berman ("Berman"), Frank Del Rio ("Del Rio"), and Andy Stuart ("Stuart") alleging what seems to be discrimination under the Americans with Disabilities Act ("ADA") (Count 1).[2] (Doc # 1) Defendants Berman, Del Rio, and Stuart were dismissed from

---

[1] "Norwegian Cruise Lines" has asserted that no such entity exists and claims that the proper defendant should be "NCL America, LLC." (Doc # 35, Pg ID 321) The Court will refer to Defendant as "NCLA" throughout the Order.

[2] In neither his original Complaint nor Amended Complaint, has Lillis explicitly alleged which law or laws were violated. He only alleges that labor laws that protect employees were not followed by NCLA. While Lillis does seemingly indicate that his rights were violated under the Fair Labor Standards Act ("FLSA") in his original Complaint by checking off that box on the standard civil case complaint sheet, he does not present any facts to the Court demonstrating that there have been any violations of the FLSA. The facts offered to the Court by Lillis suggest that he is claiming that he has faced discrimination under the ADA. Lillis also stated in his deposition

1

this case in accordance with a Stipulated Order on February 7, 2018. (Doc # 21) Lillis filed an Amended Complaint on October 30, 2017, in which he provided the Court with additional facts to support his claim. (Doc # 12) Lillis later obtained counsel on February 1, 2018. (Doc # 20)

Before the Court is NCLA's Motion for Summary Judgment, filed on February 15, 2019. (Doc # 35) Lillis filed an untimely Response on May 21, 2019. (Doc # 37) On May 22, 2019, Lillis filed a Motion for Extension of Time to File Response. (Doc # 38) This Motion was granted, and Lillis' Response is deemed timely. NCLA filed a Reply on June 19, 2019. (Doc # 39) The Court held a hearing on this Motion on May 22, 2019.

The facts are as follows. Lillis started working for NCLA in 2004 as a chef on the cruise vessel, MS Pride of America. (Doc # 1, Pg ID 12; Doc # 35, Pg ID 324; Doc # 35-3, Pg ID 372) In 2006, he was promoted to the position of Executive Sous Chef. (Doc # 35-3, Pg ID 372) At NCLA, Executive Sous Chefs are given various operational and financial responsibilities. (Doc # 35-4) As part of the Executive Sous Chef job description, sous chefs must demonstrate the following physical abilities:

---

that he would only be pursuing a discrimination claim pursuant to the ADA. (Doc # 35-3, Pg ID 402) Accordingly, the Court will assess the merits of a discrimination claim under the ADA.

- Is able to maintain a sense of balance without disturbance while walking and standing;
- Is able to climb up and down vertical ladders and stairways;
- Is able to step over a door sill or coming up to 24 inches in height;
- Is able to open and close watertight doors that weigh up to 55 pounds;
- Is able to lift at least a 40-pound load off the ground, and to carry, push, or pull the same load;
- Is able to grasp and manipulate common tools such as wrenches, hammers, screwdrivers, and pliers;
- Is able to crouch, kneel, and crawl;
- Is able to distinguish differences in texture and temperature by feel;
- Is able to intermittently stand on feet for up to four hours with minimal rest periods;
- Is able to reach to visual alarms and instructions;
- Is able to reach to audible alarms and instructions;
- Is capable of normal conversation;
- Is able to pull an uncharged 1.5-inch diameter, 50' fire hose with nozzle to full extension, and to lift a charged 1.5-inch diameter fire hose to firefighting position;
- Is physically able to put on a Personal Flotation Devise without assistance from another individual; and
- Has no physical limitations that would hinder or prevent the performance of duties.

(Doc # 35-4, Pg ID 421) NCLA requires that its Executive Sous Chefs meet all of these physical requirements since all crew members must assist with shipboard duties according to the United States Coast Guard ("USCG") guidelines. (*Id.*)

On February 8, 2013, Lillis began to see the NCLA cruise ship's doctor because he was experiencing back pain. (Doc # 35-3, Pg ID 377) On February 10, 2013, Lillis began to experience numbness in his lower back and felt as if he was

paralyzed. (*Id.*) NCLA subsequently medically disembarked Lillis and transported him to the hospital. (Doc # 35-3, Pg ID 378; Doc # 35-5) Following his hospitalization, Lillis underwent an emergency lumbar laminectomy, which was performed by Dr. Thomas Rogers ("Dr. Rogers"). (Doc # 35-3, Pg ID 379) Dr. Rogers explained to Lillis that as a result of his temporary paralysis, his spinal nerve roots were compressed. (*Id.*)

After Lillis was released from the hospital, he returned to Detroit, Michigan, but remained off from work for some time. (*Id.*) On September 8, 2013, Lillis' treating physician in Michigan, Dr. Ghaus Malik ("Dr. Malik"), cleared him to return to work with no restrictions. (*Id.* at 380.) Immediately after Lillis received clearance from Dr. Malik, NCLA mandated that he be cleared by another physician, Dr. Joyce Caballero ("Dr. Caballero"), before it would allow him to resume working. (*Id.*) Dr. Caballero cleared Lillis to return to work on January 6, 2014. (*Id.*) Lillis finally returned to work on the MS Pride of America on March 9, 2014. (*Id.*) Once Lillis returned to NCLA, he completed his first 16-week rotation. (*Id.* at 381.)

On June 9, 2014, Lillis experienced intermittent lower back pain and numbness on the bottom of his feet. (*Id.*) He saw Dr. Rogers for his discomfort and Dr. Rogers told Lillis that he "shouldn't be walking, let alone working." (*Id.* at 382.) According to Dr. Rogers, at that point, it was determined that it might be another

year from June 9, 2014, until Dr. Rogers could completely know the full extent of Lillis' recovery. (Doc # 35-7)

Lillis returned to NCLA for another rotation in late August or September of 2014. (Doc # 35-3, Pg ID 383) Lillis did not complete this rotation however because once he began experiencing leg pain in early September 2014, his supervisors ordered him to report to the onboard medical unit. (Doc # 35, Pg ID 327) One of NCLA's doctors, Dr. Ali Yasser ("Dr. Yasser"), examined Lillis, who reported numbness in his lower extremities and pain in his back. (Doc # 35-3, Pg ID 383) Dr. Yasser then made the decision to medically disembark Lillis for the second time. (Doc # 35-3, Pg ID 383; Doc # 35-8) September 3, 2014 was the last day that Lillis worked for NCLA. (Doc # 35-3, Pg ID 384)

In September 2014, Lillis contacted NCLA and spoke with Berman, its medical benefits coordinator. (*Id.* at 384.) Lillis indicated to Berman that Dr. Rogers said to Lillis during his June 9, 2014 visit that he should "stay off work for at least two years." (*Id.* at 397.) Lillis also expressed to Berman that he lied to his physician, Dr. Malik, in order to obtain clearance to return to work.[3] (*Id.* at 394.) Lillis led Dr.

---

[3] NCLA cites to an email exchange between Lillis and NCLA in which Lillis allegedly admits to lying to Dr. Malik. (Doc # 35-9) However, the language NCLA alleges is used in the email from Lillis to NCLA is not in the document that NCLA cites to. (*Id.*) The Court will still take that allegation as true since Lillis confirms NCLA's assertion in his deposition. (Doc # 35-3, Pg ID 394)

5

Malik to believe that when he returned to work, he was going to return to a light-duty job. (*Id.*)

Lillis met with another physician, Dr. Earlaxia Norwood ("Dr. Norwood"), on July 7, 2015. (*Id.* at 388.) Lillis explained to Dr. Norwood that he continued to have pain in his lower back as well as pain that radiates down his buttocks and down his leg. (*Id.*) Lillis also said to Dr. Norwood that he was concerned about not being able to work continuously if he was placed back on the ship, and expressed that he did not feel that he should go back to work until he was ready. (*Id.*)

On September 21, 2015, Lillis was cleared by Dr. Malik to return to work. (*Id.* at 389.) Dr. Malik opined that Lillis could begin working again on October 20, 2015 with no restrictions, and Lillis later forwarded Dr. Malik's medical opinion to NCLA. (Doc # 35-3, Pg ID 384, 389; Doc # 35-11) On January 18, 2016, NCLA sent Lillis a letter informing him that he was not eligible to return to work. The letter reads as follows:

> Dear Mr. David Lillis:
>
> We regret to inform you that you are not eligible for rehire with Norwegian Cruise Line. Following your most recent medical disembarkation, you admitted to Norwegian's Claims Department that you lied to your primary care physician in order to obtain a clearance to return to work when in fact your treating surgeon told you not to return to work for at least two years. Your misrepresentation regarding your back condition led to your medical disembarkation for the very condition you concealed from Norwegian.

6

> Because you misrepresented your medical condition you are not eligible for rehire with Norwegian Cruise Line. We do wish you the best of luck in the future.
>
> Sincerely,
>
> Verania Pena

(Doc # 35-12)

After Lillis received this letter, he attempted to appeal NCLA's decision to deny his reinstatement. (Doc # 35-3, Pg ID 391) Lillis spoke with Jeff Anderson ("Anderson"), who was the person in charge of NCLA's medical benefits and medical department. (*Id.*) Anderson and Lillis reached an understanding, and Lillis agreed to undergo an Independent Medical Evaluation ("IME") by a third-party doctor and be bound by such doctor's medical opinion. (*Id.* at 397.) Lillis was evaluated by Dr. Paul Drouillard ("Dr. Drouillard") on April 22, 2016, and Dr. Drouillard opined that he would not recommend that Lillis be allowed to return to work for NCLA as an Executive Sous Chef on an unrestricted basis. (Doc # 35-13) More specifically, Dr. Drouillard stated that it would be too strenuous for Lillis to lift 110-120 pounds and work 15-hour days. (*Id.*)

On May 23, 2016, Anderson sent Lillis a letter and said, "[b]ased on Dr. Drouillard's report and our prior agreement concerning the same, you have been independently determined as medically unfit for duty and we are therefore unable to return you to duty as an Executive Sous Chef at this time." (Doc # 35-14) Lillis

7

filed a Charge of Discrimination with the EEOC on July 6, 2016. (Doc # 35-15) He alleged that NCLA discriminated against him due to his disability. (*Id.*) It was alleged by Lillis that he was placed on medical leave in September 2014, but claims that NCLA denied his reinstatement due to his disability in violation of the ADA. (*Id.*)

II. ANALYSIS

A. Standard of Review

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986). A fact is material if it could affect the outcome of the case based on the governing substantive law. *Id*. at 248. A dispute about a material fact is genuine if on review of the evidence, a reasonable jury could find in favor of the nonmoving party. *Id*.

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must "go beyond the pleadings and … designate specific facts showing that there is a genuine issue for trial." *Id*. at 324. The Court may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish

the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Conclusory allegations do not create a genuine issue of material fact which precludes summary judgment." *Johari v. Big Easy Restaurants, Inc.*, 78 F. App'x 546, 548 (6th Cir. 2003).

When reviewing a summary judgment motion, the Court must view the evidence and all inferences drawn from it in the light most favorable to the nonmoving party. *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**B. ADA Claim**

NCLA argues that Lillis cannot establish a prima facie case under the ADA. Lillis responds that he has stated a prima facie case under the ADA and that there are genuine issues of material fact that preclude summary judgment.

The ADA provides that

> [n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). An employee may prove disability discrimination using the familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973): "the employee has the initial burden of establishing his *prima facie* case; if he does so, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions; finally, the employee has the burden of rebutting the employer's proffered reasons by showing them to be pretextual." *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 427, 433 (6th Cir. 2014).

To make out a prima facie case under the ADA, the plaintiff must establish by a preponderance of the evidence that: (1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) he suffered an adverse employment action because of his disability. *Id.* at 433. The plaintiff's disability must be a "but for" cause of the adverse employment action. *Id.*

### 1. "Disabled" Under the ADA

Under the ADA, a disability is defined as follows.

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(1). The term "disability is to be "construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms" of the statute. *Id.* at § 12102(4)(A). The term "substantially limits" "means an inability to perform or a significant restriction on the ability to perform as compared to the average person in the general population." *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 633 (6th Cir. 1998). "Major life activities" include concentrating, thinking, and working, as well as the operation of a major bodily function, including neurological and brain functions. 42 U.S.C. §§ 12102(2)(A)-(B).

Neither party disputes that Lillis was *disabled* based on the statute's definition of the term. Lillis suffered from persisting back pain, which required him to have corrective surgery, and caused him to miss a significant amount of work. The Court is satisfied that Lillis was disabled according to the ADA's definition of the term "disability."

### 2. Otherwise Qualified to Perform Essential Functions of the Job

NCLA argues that Lillis was not qualified to perform the essential job functions of an Executive Sous Chef because he could not demonstrate the physical abilities required pursuant to the USCG guidelines. According to NCLA, Lillis' two

medical disembarkations conclusively prove that his physical status prevented him from being qualified to perform his job functions. NCLA further points out that Lillis' medical condition was also confirmed by a third-party physician, which solidifies Lillis' inability to perform the essential functions of an Executive Sous Chef.

Regarding a possible accommodation, NCLA contends that it was not required to offer Lillis any reasonable accommodations because he presented a direct threat to himself and others. In support of its argument, NCLA cites to *Michael v. City of Troy Police Dep't*, 808 F.3d 304, 307 (6th Cir. 2015). NCLA also directs the Court to *Hamlin v. Charter Twp. of Flint*, 165 F.3d 426, 431 (6th Cir. 1999), where the Sixth Circuit held that in determining whether an individual would pose a direct threat, the factors to be considered include: (1) duration of the risk; (2) the nature and severity of the potential harm; (3) the likelihood that the potential harm will occur; and (4) the imminence of the potential harm.

First, NCLA argues that the first factor has been satisfied because Lillis still suffers from his disability, and NCLA claims that the duration of the risk is ongoing. Second, NCLA alleges that the nature and severity of the harm are great because Lillis' physical limitations could result in severe injury or death to ship passengers if he cannot assist in emergency situations. Third, NCLA contends that because

Lillis has been medically disembarked twice, that demonstrates that it is possible that Lillis could experience progressive weakness and numbness in his lower extremities going forward. Fourth, NCLA claims that Lillis' status, as physically limited on an ongoing basis, would create an imminent threat to both himself and others.

In response to NCLA, Lillis contends that even if he was not "qualified" for his position, he still meets this prong of the analysis because there is a question of fact as to whether NCLA could have offered Lillis an alternative position that could have accommodated Lillis' disabilities. Lillis claims that there were multiple positions that he could have performed if NCLA truly desired for him to avoid the more active duties of an Executive Sous Chef. Lillis asserts that he mentioned to Berman that he could have returned as an instructor, which he claims would not be as taxing as the position he held. Lillis further contends that the question of his ability to perform the essential job functions of an Executive Sous Chef should be preserved for trial and left to a fact-finder.

Lillis must show that he is otherwise qualified to perform the job requirements of an *Executive Sous Chef*, with or without reasonable accommodation. *Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 598 (6th Cir. 2002) (citing *Monette v. Elect. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996)). The Court finds that Lillis does not

meet the second prong since he cannot perform as an Executive Sous Chef without being a direct threat to himself or others. The job description of an Executive Sous Chef clearly defines certain responsibilities and abilities that an individual holding that position must be able to achieve. Based on Lillis' two medical disembarkations and the report from an independent third-party physical, there is no question of fact that at this time, Lillis cannot meet the standard requirements laid out in the job description for his current position. Lillis argues that he is qualified for other positions at NCLA, however, that is irrelevant. This Court is required to determine if Lillis can perform the essential functions of the employment position that he holds or desires. *See Cotter*, 287 F.3d at 598. Since Lillis cannot perform the essential functions of an Executive Sous Chef, he cannot make out a prima facie case for discrimination under the ADA.

The Court notes that even if Lillis could satisfy the second and third prongs of the analysis, it would be of no consequence because Lillis has not demonstrated that NCLA's decision to not reinstate him was pretextual. NCLA expressed to Lillis that he was not rehired because he misrepresented the status of his physical condition to NCLA. (Doc # 35-12) There are no facts that indicate that this explanation was pretextual. Consequently, Lillis' ADA claim fails.

### III. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (Doc # 35) is **GRANTED**.

s/Denise Page Hood
United States District Court Judge

DATED: August 28, 2019